**CASE NO. 24-5549**

---

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

THOMAS MICHAEL SMITH and MONALETO SNEED,

*Plaintiffs-Appellants,*

v.

P.A.M. TRANSPORT, INC.,

*Defendant-Appellee.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE, CASE NO. 3:21-CV-00262
HON. ELI RICHARDSON**

---

**BRIEF OF APPELLEE P.A.M. TRANSPORT, INC.**

---

M. Reid Estes, Jr., #9043
Autumn L. Gentry, #20766
DICKINSON WRIGHT PLLC
424 Church Street, Suite 800
Nashville, Tennessee  37219
Telephone:  (615) 244-6538
Facsimile:  (844) 670-6009a
restes@dickinsonwright.com
agentry@dickinsonwright.com

*Counsel for Defendant-Appellee
P.A.M. Transport, Inc.*

## CORPORATE DISCLOSURE

Pursuant to 6 Cir. R. 26.1, P.A.M. Transport, Inc. makes the following disclosures:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate.

Yes.  P.A.M. Transportation Services, Inc.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.


s/ Autumn L. Gentry                          November 19, 2024
Autumn L. Gentry                              Date

ii

# TABLE OF CONTENTS

CORPORATE DISCLOSURE ................................................................ ii

TABLE OF AUTHORITIES .............................................................. vii

STATEMENT AGAINST ORAL ARGUMENT ................................. viii

STATEMENT OF THE ISSUES ............................................................1

STATEMENT OF THE CASE ...............................................................2

STATEMENT OF FACTS ......................................................................4

    I.       INTRODUCTION .......................................................4

    II.     PAM TRANSPORT .....................................................6

    III.   PLAINTIFFS' HOSTILE WORK ENVIRONMENT CLAIMS..........7

        A.    Plaintiffs' Claims of Less Pay.......................................8

        B.    Plaintiffs' Claims That They Were Treated In A "Hostile And Abusive Manner," And Called "Monkey Ass"..................9

        C.    Arguments Plaintiffs Waived.....................................10

        D.    Plaintiff's Failed To Report Their Hostile Work Environment Claims .....................................................12

SUMMARY OF ARGUMENT ............................................................15

ARGUMENT .......................................................................................18

    I.       SUMMARY ARGUMENT STANDARD.........................................18

    II.     THE DISTRICT COURT PROPERLY GRANTED DEFENDANT SUMMARY JUDGMENT BECAUSE THE UNDISPUTED MATERIAL FACTS DEMONSTRATE THAT PLAINTIFFS' PROOF IS INSUFFICIENT TO ESTABLISH THE EXISTENCE OF ELEMENTS

ESSENTIAL TO THEIR CLAIMS FOR HOSTILE WORK
ENVIRONMENT ..............................................................................19

A.    The District Court Properly Found That Plaintiffs'
Claims That They Were Allegedly Paid Less (Relative
To The Amount Of Work Completed) Are Discrete
Acts That Do Not Constitute Hostile Work
Environment ..............................................................................20

B.    The District Court Properly Found That Plaintiffs'
Claims That They Were Allegedly Treated In A Hostile
And Abusive Manner Do Not Constitute Hostile Work
Environment ..............................................................................28

1.    Plaintiffs' Allegations Are Not Based on
Race .....................................................................29

a.    Plaintiffs failed to establish any
direct evidence of race-specific and
derogatory terms .......................................29

b.    Plaintiffs failed to establish any
comparative evidence about how
the alleged harasser treated
members of both races in a mixed
race workplace. ..........................................32

2.    Plaintiffs Allegations Of Harassment In
Its Totality Was Not Sufficiently Severe
Or Pervasive To Alter The Conditions Of
Plaintiffs' Employment And Create An
Abusive Working Environment ...........................34

C.    PAM Is Not Liable Because Plaintiffs Cannot Show
That PAM Knew Or Should Have Known About The
Alleged Harassment And Failed To Act ...................................38

CONCLUSION AND RELIEF REQUESTED ........................................43

CERTIFICATE OF SERVICE ................................................................44

iv

CERTIFICATE OF COMPLIANCE.........................................................45

ADDENDUM .....................................................................................46

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................................18

*Barany-Snyder v. Weiner*,
539 F.3d 327 (6th Cir. 2008) ..........................................................8, 11, 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................18

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)..............................................................................39

*Franklin v. Tennessee Dep't of Transp.*,
No. 3-12-0653, 2013 WL 2897944 (M.D. Tenn. June 13, 2013)......................29

*Jara v. Tennessee State Univ.*,
No. 3:20-CV-00131, 2022 WL 331276 (M.D. Tenn. Feb. 3, 2022) ............13, 27

*Kelly v. Senior Centers*,
169 F. App'x 423 (6th Cir. 2006) ..........................................................36

*Masters Ent. Grp., Inc. v. Aurich*,
No. 3:18-CV-01314, 2022 WL 2137090 (M.D. Tenn. June 14,
2022) ................................................................................................42

*McNeal v. City of Blue Ash, Ohio*,
117 F.4th 887 (6th Cir. 2024) ..........................................................22, 23, 37

*Moore v. Food Lion*,
No. 306-0712, 2007 WL 596955 (M.D. Tenn. Feb. 21, 2007) ....................6, 33

*Ogbonna-McGruder v. Austin Peay State Univ.*,
No. 3:21-CV-00506, 2023 WL 3572891 (M.D. Tenn. May 19,
2023), *aff'd*, 91 F.4th 833 (6th Cir. 2024) ..................................................21, 22

*Reed v. Procter & Gamble Mfg. Co.*,
556 F. App'x 421 (6th Cir. 2014) ..........................................................36

*Self-Ins. Inst. of Am., Inc. v. Snyder*,
    827 F.3d 549 (6th Cir. 2016) ...............................................................22

*Sneed v. Bd. of Prof'l Responsibility of Supreme Court*,
    301 S.W.3d 603 (Tenn. 2010) .........................................................8, 22

*Vore v. Indiana Bell Tel. Co., Inc.*,
    32 F.3d 1161 (7th Cir.1994) ...............................................................29

*Williams v. CSX Transp. Co., Inc.*,
    643 F.3d 502, 2011 WL 2547561 (6th Cir. 2011) .....................18, 20, 28, 29, 32

*Wyatt v. Nissan N. Am., Inc.*,
    999 F.3d 400, 2021 WL 2177668 (6th Cir. 2021) .............................25

**Statutes**

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 1981 .............................2, 29, 35, 36

Tennessee Human Rights Act ...................................................................................2

**Other Authorities**

Federal Rules of Civil Procedure Rule 56(a).........................................................18

Tenn. R. App. P. 27(a)(7) ....................................................................................15

## STATEMENT AGAINST ORAL ARGUMENT

Defendant P.A.M. Transport, Inc. respectfully submits that oral argument is unnecessary and, therefore should be denied, as the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF THE ISSUES

I.      Whether the district court properly granted Defendant summary judgment on Plaintiffs' hostile work environment claims on the grounds that Plaintiffs failed to show that the alleged harassment was based on race?

II.     Whether the district court properly granted Defendant summary judgment on Plaintiffs' hostile work environment claims on the grounds that Plaintiffs failed to show that the alleged harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment?

III.    Whether Defendant is also entitled to summary judgment because Plaintiffs failed to show that PAM knew or should have known about the alleged harassment and failed to act?[1]

IV.     Whether Defendant is also entitled to summary judgment because it established the affirmative defense that it took reasonable care to prevent and to correct harassment and Plaintiffs did not avail themselves of Defendant's procedures to address harassment?[2]

---

[1]  The district court did not assess the fifth element of Plaintiffs' hostile work environment claims because the court found that Plaintiffs failed to establish a genuine issue of material fact as to the third and fourth elements.  Doc. 43, Mem. Opinion, PageID# 1026, n. 95.

[2]  The district court did not reach the merits of this affirmative defense because the court found that Plaintiffs failed to establish the third and fourth elements of their hostile work environment claims.  Doc. 43, Mem. Opinion, PageID# 1022, n. 93.

## STATEMENT OF THE CASE

On March 26, 2021, Plaintiffs Thomas Michael Smith ("Smith") and Monaleto Sneed ("Sneed") (collectively, "Plaintiffs") filed suit against Defendant P.A.M. Transport, Inc. ("PAM") for alleged race discrimination, hostile work environment, and retaliation.  Doc. 1, Compl.  Sneed filed his claims pursuant to Title VII of the Civil Rights Act of 1964 ("the Civil Rights Act"), 42 U.S.C. § 1981, and the Tennessee Human Rights Act ("THRA").  *Id.* at ¶ 5.  Having filed no timely EEOC charge, Smith filed his claim pursuant only to § 1981.  *Id.*

Following discovery, PAM filed a Motion for Summary Judgment on all of Plaintiffs' claims on May 9, 2022.  Doc. 24, Mt. for Summ. Judg.  On May 9, 2024, the district court granted PAM summary judgment and dismissed Plaintiffs' claims with prejudice.  Doc. 43, Mem. Opinion, PageID# 943, 1030-31.

On June 7, 2024, Plaintiffs timely appealed the district court's ruling.  Doc. 46, Notice of Appeal.  On October 4, 2024, Plaintiffs filed their appellate brief wherein they announced that they were completely "abandon[ing] their [race] discrimination and retaliation claims."  Plfs' App. Brief, p. 4.  As a result, Plaintiffs are solely appealing the dismissal of their claims for hostile work environment.

As demonstrated below, the undisputed facts not only show that Plaintiffs' claims lack merit, but they also demonstrate that Plaintiffs' claims entirely rely upon

facts not evidence, as well as inadmissible and uncorroborated testimonial evidence that is contrary to established facts.

## STATEMENT OF FACTS

### I.    INTRODUCTION

Plaintiff Monaleto Sneed has developed a cottage industry of suing former employers after being fired for underperformance.  In fact, this is the *fifth* lawsuit Sneed has filed against a former employer for race discrimination, hostile work environment, and/or retaliation in the Middle District of Tennessee since 2007.[3] Doc. 33-2, Deposition of M. Sneed ("Sneed Depo."), PageID# 549-558.  In addition to filing an EEOC charge in each of these lawsuits, Sneed filed a *sixth* EEOC charge against a former employer in approximately 1994 or 1995 for similar reasons.  *Id.* at 555-558.

Both Plaintiffs worked briefly for PAM as truck drivers.  Sneed was employed with PAM for approximately 14 months from February 8, 2019 to April 16, 2020. Doc. 25-2, Declaration of H. Wright ("Wright Decl."), PageID# 222, at ¶ 9.  Sneed

---

[3] *Pearsall, et al., v. TT of Antioch d/b/a Nashville Dodge*, Middle District of Tennessee No. 3:07-cv-341; *Sneed v. Hickory Hollow Acquisitions*, Middle District of Tennessee No. 3:08-cv-00398; *Clay et al v. Gary Mathews Motors, LLC et al*, Middle District of Tennessee No. 3:13-cv-01017; and, *Sneed v. United Insurance Company of America*, Middle District of Tennessee No. 3:17-cv-01481.  The four previous lawsuits and the present lawsuit were all filed by one or both of Plaintiffs' current attorneys.

initially worked for PAM as an over-the-road driver[4] until he requested and was transferred to a local driver[5] position beginning on April 10, 2019. *Id.* Smith was employed by PAM as a local driver for only approximately 6 months from October 24, 2018 to April 23, 2019. *Id.* at ¶ 10. During the time they were employed as local drivers, both Sneed and Smith were assigned to PAM's Whites Creek location where they, along with most of the other Whites Creek local drivers, were designated as Texas Regional Relay ("TRR") drivers. *Id.* at 223, ¶ 12. "TRR" is a relay network created specifically to transport freight to/from Laredo, Texas, to various points in the US utilizing a network of day-cab trucks. *Id.* TRR drivers are paid a daily rate. *Id.*

After meeting Plaintiff Smith at PAM (where, while working as local truck drivers, their employment overlapped for less than *two weeks*), Sneed recruited Smith, who had not filed a Charge of Discrimination with the EEOC and who has since voluntarily resigned from PAM and now drives locally for another trucking company earning over 40% more than he earned at PAM (Doc. 33-1, Deposition of

---

[4] Over-the-road drivers spend weeks and even months on the road and, therefore, are assigned trucks with sleeper berths. *Id.* at ¶ 9.

[5] Local drivers are home each day after work and, therefore, are assigned trucks without sleeper berths. Many drivers prefer local routes and dedicated routes for this reason. *Id.* at ¶ 9.

T. Smith ("Smith Depo."), PageID# 418-419), to join this lawsuit after Sneed was

terminated for refusing loads and/or failing to work.  Doc. 33-2, Sneed Depo., 675-

677; Doc. 33-1, Smith Depo., PageID# 598-599; Doc. 25-2, Wright Decl., PageID#

225, at ¶ 23.  Sneed and Smith, who are both African-American, claim that they were

racially discriminated against primarily by their driver manager, Jermaine Davis,

who is also *African-American*.[6]

## II.    PAM TRANSPORT

PAM is a 40-year-old transportation company, which currently employs over

2,400 truck drivers who drive either over-the-road, or drive dedicated and/or local

routes.  Doc. 25-2, Wright Decl., PageID# 221, ¶ 4.  PAM is a progressive company

whose drivers include men, women and minorities.  *Id.* at ¶ 5.  In fact, during

Plaintiffs' employment with PAM, the racial composition of PAM's drivers

nationwide averaged 50.9% white, with 33.7% of the 49.1% minority races being

African-American.  *Id*.  Similarly, during this same period of time, the racial

composition of the driving force at the Whites Creek location where Plaintiffs were

---

[6] Neither Plaintiff has alleged a claim of color discrimination, which is "distinct from race discrimination in that the former 'arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual.'" *Moore v. Food Lion*, No. 306-0712, 2007 WL 596955, at *2 (M.D. Tenn. Feb. 21, 2007) (quoting *Bryan v. Bell Atlantic Maryland, Inc.*, 298 F.3d 124, 133 n. 5 (4th Cir.2002)).

assigned, was approximately 50-50 between whites and minorities. *Id.*

As stated on its website, PAM believes its employees are its most valued asset. Doc. 25-2, Wright Decl., PageID# 222, at ¶ 6. To ensure a positive, discrimination free work environment, each driver is provided a driver manual that succinctly sets forth PAM's Anti-Discrimination and Harassment Policy which explicitly advises drivers to report any concerns or observations of discrimination to their supervisor, driver/fleet manager or human resources. *Id*. at ¶ 7. The driver manual also sets forth PAM's Open Door Communications Policy which "encourages all employees to discuss any matter openly or in confidence and without fear of retaliation" to their "immediate supervisor and, if necessary, to succeeding levels of management up to and including the Company's president." *Id*. During their employment, neither Plaintiff reported any complaints of race discrimination to PAM. *Id.* at ¶ 8.

## III.  PLAINTIFFS' HOSTILE WORK ENVIRONMENT CLAIMS

Plaintiffs rely on two categories of "harassment" for the hostile work environment claims:

> (i) they were paid less (relative to the amount of work completed) than their non-African American counterparts, and (ii) Davis and Claytor spoke to them in a "hostile and abusive manner," by "cuss[ing], scream[ing], criticiz[ing], belittl[ing], talk[ing] down to, and threaten[ing]" them, as well as referring to each of them as "monkey ass."

Doc. 42, Mem. Opinion, PageID# 1023; *see also* Doc. No. 31, Plfs' Resp. to Def's

Mt. for Summ. Judg., PageID# 366.  The following undisputed facts demonstrate that Plaintiffs' claims are simply without merit, if not utterly frivolous.

### A.    Plaintiffs' Claims Of Less Pay

Plaintiffs claim that PAM often assigned them longer routes and more loads per day, which resulted in Plaintiffs working more hours than non-African American employees for the same daily rate of pay.[7]  However, the undisputed facts establish

---

[7] In the lower court, Sneed also claimed that white drivers were paid more than the $180 daily rate he was paid, and that African-American drivers were often required to work on Saturdays while white drivers did not.  Doc. 33-2, Sneed Depo., PageID# 660.  Plaintiffs failed to address this claim on appeal and, therefore, have waived this argument.  *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) (citing Tenn. R. App. P. 27(a)(7)) (finding it "is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 331 (6th Cir. 2008) (holding issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Regardless, the undisputed facts demonstrate that no other Whites Creek TRR driver, regardless of race, earned more than $180/day, and no driver earned more than the Plaintiffs.  Doc. 25-2, Wright Decl., PageID# 224, ¶ 19.  In addition, Whites Creek drivers were never *required* to work on Saturdays.  Rather, working on Saturdays was purely *voluntary*.  Doc. 25-2, Wright Decl., PageID# 225, ¶ 20.  Even Sneed's paystubs show that out of the approximately 52 weeks he worked as a local driver, he only worked *eight* Saturdays.  *Id*.  In stark contrast to his deposition testimony adamantly claiming that he did not want to work Saturday (Doc. 33-2, Sneed Depo., PageID# 637), Sneed's uncontradicted Qualcomm records reveal that he requested, even begged, to work Saturdays on multiple occasions.  Doc. 25-2, Wright Decl., PageID# 225, ¶ 21.

that all local drivers working out of the Whites Creek location were assigned similar routes and, on average, were assigned a similar number of loads per day. In fact, the unrefuted route records PAM produced in this case reveal that the local drivers working out of the Whites Creek location during Plaintiffs' employment with PAM all drove similar routes and were assigned a similar number of loads per day on average. Doc. 25-2, Wright Decl., PageID# 223, ¶ 15. Moreover, all of Plaintiffs' routes and/or loads were assigned to them by their African-American driver manager. *Id.* at PageID# 222-223, ¶ 11.

### B. Plaintiffs' Claims That They Were Treated In A "Hostile And Abusive Manner," And Called "Monkey Ass"

Plaintiffs' claims that they were subject to a hostile work environment is based on Sneed's testimony that "*one time*," Davis, his African-American driver manager, told him to get his "monkey A-S-S out there and do the job or we can . . . write you up." Doc. 33-2, Sneed Depo., PageID# 663. Smith claims that he was also called "monkey ass" by Davis. Doc. 33-1, Smith Depo., PageID# 454. In addition, Sneed asserts that Jordan Claytor, who at that time was the operations manager for PAM, also used the term "monkey ass" and cuss words when communicating with him. Doc. 33-2, Sneed Depo., PageID# 665.

Assuming it really happened at all, Plaintiffs have presented no evidence that the term "monkey ass" is based on race, especially considering that both Plaintiffs

9

and their driver manager Jermaine Davis are *African-American*.  Even if such proof existed outside of Plaintiffs' dubious testimony, there is not one single reference in the voluminous Qualcomm[8] messages, or anywhere else in the record, to the term.

Despite Sneed testifying "for the most part, all communication was [sic] done by the Qualcomm" (Doc. 33-2, Sneed Depo., PageID# 610), and "I would try my best to communicate with them with the Qualcomm" because that is "our legal record there," *id.* at 609, there is not one single reference to the term or to any complaints of discrimination in the Qualcomm messages, which span over 36,000 lines of Excel spreadsheets.[9]  Doc. 25-2, Wright Decl., PageID# 222, ¶ 8.

## C.    Arguments Plaintiffs Waived

In the district court, Plaintiffs relied upon allegations that they were both allegedly assigned older trucks with more mileage than those assigned to white drivers, and Defendant allegedly did not pay Sneed for time off (or vacation pay) as

---

[8] Qualcomm is a messaging system located in each truck so that drivers can communicate with their driver manager and/or dispatcher about route/load assignments and truck assignments, as well as any issues that may arise, including employment issues. *Id.* Doc. 25-2, Wright Decl., PageID# 223, ¶ 14.

[9] Plaintiffs claim the messages are "incomplete and indecipherable." Doc. 31, Plfs' Resp. to Def's Mt. for Summ. Judg., PageID#371.  Yet, the magistrate judge "reviewed the retrieved Qualcomm information and [found] that it provides responsive information requested by Plaintiffs," and that Plaintiffs had failed to demonstrate that missing information even exists. Doc. 30, Order, PageID# 346.

it did white drivers to support their race discrimination claims.  Now that Plaintiffs have completely abandoned those claims, Plaintiffs attempt to assert for the very first time on appeal that these allegations, along with a new claim that Defendant allegedly failed to pay Sneed holiday pay, now somehow contributed to their hostile work environment claims.  Plfs' App. Brief, pp. 29, 42.  Plaintiffs did not rely upon either one of their older-trucks or paid-time-off claims to support their hostile work environment claims at the trial level, and failed to even mention, much less address, holiday pay at all.  As a result, all of these issues are waived.  *See Barany-Snyder*, 539 F.3d at 332 (holding that issues "that are not squarely presented to the trial court are considered waived and may not be raised on appeal").

In the event the Court determines that Plaintiffs did not waive their first two arguments on the grounds that they were used instead to support their claims for *race discrimination*, the undisputed material facts demonstrate that these claims are, likewise, without merit.

Sneed's claim he was not granted paid time off or vacation pay is utterly frivolous as rather than taking off work for vacation, "Plaintiffs stipulated that Sneed requested that his accrued vacation time be paid out on his paycheck." Doc. 43, Mem. Opinion, Page ID# 981, n.53 (citing Doc. No. 32, Plfs' Resp. to Stmt. Of Undisp. Mat. Facts, PageID# 384).  Plaintiffs further stipulated that PAM paid him his accrued vacation pay on March 12, 2020.  Doc. No. 32, Plfs' Resp. to Stmt. Of

Undisp. Mat. Facts, PageID# 384.

Plaintiffs' claim that they were assigned older trucks than those assigned to white drivers fares no better. Although neither Plaintiff could recall the model year of the truck he drove (Doc. 33-2, Sneed Depo., PageID# 587; Doc. 33-1, Smith Depo., PageID# 437), they claimed that white drivers had newer trucks. Doc. 33-2, Sneed Depo., PageID# 588-589. Despite their assumptions, throughout Plaintiffs' employment which all together spanned a mere 18 months (from October 24, 2018 to April 16, 2020), the local drivers assigned to PAM's White Creek location *all* drove 2018 Peterbilt trucks the vast majority of the time. Doc. 25-2, Wright Decl., PageID# 224, ¶ 16. While two 2019 Peterbilt trucks were also driven during this time period, *neither one was driven by a white driver*. *Id.* Rather, these two newer trucks were driven by one Iraqi driver and one African-American driver for a total of *seven* days during the relevant 18-month period during which Plaintiffs were employed. *Id.* PAM's records further reflect that during this same time period, three 2017 International trucks were also used by six drivers a total of *forty-four* days. *Id.* Other than being driven *one* day by Smith and *one* day by an Iraqi driver, the other four drivers who were assigned these older 2017 trucks were all *white*. *Id.*

### D.    Plaintiff's Failed To Report Their Hostile Work Environment Claims.

Other than Plaintiffs' self-serving testimony, the record is devoid of any

evidence establishing that Plaintiffs ever opposed, reported, and/or complained to anyone at PAM that they were being racially discriminated against.[10]

During his deposition, Sneed testified that he reported some of his complaints of racial discrimination by phone, but that he communicated *most* of his complaints through his Qualcomm messages. Doc. 33-2, Sneed Depo., PageID# 605; 608-610; 103-104; 619-620; 623; 652-653. Yet, Sneed's voluminous Qualcomm messages *do not reveal one single instance where he made any racial complaints*. Doc. 25-2, Wright Decl., PageID# 222, ¶ 8.

Smith testified that he complained less than five times to a former driver liaison, Jim Brown, who unfortunately is now deceased. Doc. 33-1, Smith Depo., PageID# 45:16-25; 49:10-12; 77:8-11. However, Mr. Brown did not have any supervisory or management authority. Doc. 25-2, Wright Decl., PageID# 226, ¶ 26. Smith conceded that he complained to no one else at PAM. Doc. 33-1, Smith Depo., PageID# 449.

---

[10] *See Jara v. Tennessee State Univ.*, No. 3:20-CV-00131, 2022 WL 331276, at *9 (M.D. Tenn. Feb. 3, 2022) (holding that "where self-serving testimony is blatantly and demonstrably false, it understandably may not create a genuine issue of material fact, thereby allowing a court to grant summary judgment") (citing *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007) (holding that a court, when determining whether there is a genuine dispute of material fact in a case, may ignore testimonial evidence when it is "blatantly contradicted" by video evidence); *see also CenTra, Inc. v. Estrin*, 538 F.3d 402, 419 (6th Cir. 2008) (assuming as true on summary judgment the nonmoving party's version of events *unless that version is "totally implausible"*) (emphasis in original)).

13

In addition, both Plaintiffs admit that they received a copy of PAM's driver manual, which sets forth PAM's Anti-Discrimination and Harassment Policy and PAM's Open Door Communications Policy. Doc. 33-2, Sneed Depo., PageID# 682-683; Doc. 33-1, Smith Depo., PageID# 490-492. However, neither Plaintiff ever reported any discriminatory conduct to PAM's human resources department or to PAM's president although they acknowledged that they could have done so. Doc. 33-2, Sneed Depo., PageID# 685-686; Doc. 33-1, Smith Depo., PageID# 492.

Further, there is no proof that Plaintiffs ever reported or complained of any such conduct. Doc 25-2, Wright Decl., PageID# 222, ¶ 8. As a result, there is no evidence that PAM knew or should have known about the alleged use of this term and yet, failed to act.

Moreover, this evidence establishes the affirmative defense that PAM took reasonable care to prevent and to correct harassment, and Plaintiffs did not avail themselves of Defendant's procedures to address harassment.

## SUMMARY OF ARGUMENT

Having abandoned their race discrimination and retaliation claims, Plaintiffs now attempt to salvage their hostile work environment claims on appeal.

Plaintiffs' claims for hostile work environment claims are based on their allegations that: 1) they were paid less (relative to the amount of work completed) than their non African-American counterparts; and 2) their superiors, including their African-American driver manager, spoke to them in a "hostile and abusive manner," by cussing, screaming, criticizing, belittling, talking down to, and threatening them, as well as referring to each of them as "monkey ass."

The district court properly rejected Plaintiffs' first purported basis for their hostile work environment claims – that they were effectively paid less per hour because they were assigned longer routes and had to haul more loads than their non-African American counterparts – because these claims were based on discrete employment acts that do not constitute harassment in the sense of intimidation, ridicule, and insult. Plaintiffs failed to brief this issue and, therefore, have waived it pursuant to Tenn. R. App. P. 27(a)(7). In the event this Court finds that Plaintiffs did not waive this argument and that it, in fact, does constitute an actual act of harassment, this argument still fails. This is because it is based upon nothing but inadmissible and/or self-serving evidence, and often contradicted by Plaintiffs' own

deposition testimony, as well as PAM's uncontradicted records showing that the local drivers working out of the Whites Creek location, during the time of Plaintiffs' employment with PAM, all drove *similar* routes and were assigned a *similar* number of loads per day on average.

The district court properly dismissed Plaintiffs' second purported basis for Plaintiffs' racial hostile work environment claims because Plaintiffs failed to prove the third and fourth essential elements of a hostile work environment. More specifically, the district court found that Plaintiffs had failed to demonstrate that the alleged harassment was: 1) based on race, and 2) in its totality, sufficiently severe or pervasive to alter the conditions of Plaintiffs' environment and create an abusive working environment.

In an attempt to bolster their remaining claim for hostile work environment, Plaintiffs brazenly assert that they were subjected to a hostile work environment because their supervisors, including their *African-American* driver manager, *repeatedly* referred to Plaintiffs as *"monkey"* and "monkey ass" in a hostile and threatening manner, and *continuously* cussed, screamed, criticized, belittled, talked down to, and threatened Plaintiffs with discipline and discharge. Such allegations are disingenuous at best, as they are in direct contradiction with Plaintiffs' own testimony. Neither Plaintiff ever testified that either of their supervisors *repeatedly* referred to them as "money ass," and neither Plaintiff ever testified that either of

16

their supervisors referred to them as *"monkey."* In fact, Plaintiff Sneed testified that his African-American supervisor called him "monkey ass" only *one time*. Plaintiff Smith claims that he was also called "monkey ass" by the same supervisor, but by no means testified that he *repeatedly* used that term.

Even with viewing the totality the evidence in the light most favorable to Plaintiffs, the district court properly found that Plaintiffs failed to present admissible evidence showing that their complaints of harassment were based on race, *and* severe or pervasive enough to alter the conditions of the employment and create a hostile work environment. As a result, the district court properly granted PAM summary judgment and dismissed Plaintiffs' claims with prejudice.

# ARGUMENT

## I.     SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment "shall" be granted if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  The party seeking summary judgment bears the initial burden of establishing the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 262-63 (1986).  Once a proper motion is made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.  *See Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 256-57.

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial.  *See Celotex*, 477 U.S. at 323.  In such a situation, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *See id.*  Moreover, a "court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511, 2011 WL 2547561 (6th Cir.

2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, 120

S.Ct. 2097, 147 L.Ed.2d 105 (2000) and Fed. R. Civ. P. 50(a)).

The uncontroverted evidence demonstrates that Plaintiffs cannot meet the

essential elements of their hostile work environment claims. As a result, PAM is

entitled to judgment as a matter of law.

## II.  THE DISTRICT COURT PROPERLY GRANTED DEFENDANT SUMMARY JUDGMENT BECAUSE THE UNDISPUTED MATERIAL FACTS DEMONSTRATE THAT PLAINTIFFS' PROOF IS INSUFFICIENT TO ESTABLISH THE EXISTENCE OF ELEMENTS ESSENTIAL TO THEIR CLAIMS FOR HOSTILE WORK ENVIRONMENT

As stated above, Plaintiffs claims for hostile work environment claims are

based on their allegations that: 1) they were paid less (relative to the amount of work

completed) than their non-African American counterparts; and 2) Davis and Claytor

spoke to them in a "hostile and abusive manner," by cussing, screaming, criticizing,

belittling, talking down to, and threatening them, as well as referring to each of them

as "monkey ass."

To succeed on a claim of a racially hostile work environment, a plaintiff must

demonstrate that (1) he belongs to a protected group; (2) he was subjected to

unwelcome harassment; (3) the harassment was based on race; (4) the harassment

was sufficiently severe or pervasive to alter the conditions of employment and create

an abusive working environment; and (5) the employer knew or should have known

19

about the harassment and failed to act.  *Williams v. CSX Transportation Co., Inc.*,

643 F.3d 502, 511 (6th Cir. 2011) (citations omitted).  In addition:

> To constitute a Title VII violation, the harassment must be both
> objectively and subjectively offensive. *Harris,* 510 U.S. at 21–22.  And
> to be actionable, the harassment creating the hostile work environment
> must be *extreme*. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S.
> 775, 786–87 (1998). Title VII is not a "general civility code," and so
> "the ordinary tribulations of the workplace, such as the sporadic use of
> abusive language, gender-related jokes, and occasional teasing" are
> insufficient to support a claim of hostile work environment (*even if it is
> based on a protected classification*). *Id*. at 788 (internal quotation
> marks omitted).
>
> "A court determines whether a hostile work environment has been
> created 'by looking at all the circumstances . . . includ[ing] the
> frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance;
> and whether it unreasonably interferes with an employee's work
> performance." *Bradley v. Arwood*, 705 F. App'x 411, 422 (6th Cir.
> 2017) (quoting *Harris*, 510 U.S. at 23).

Doc. 43, Mem. Opinion, Page ID#1022-23 (emphasis added).

While Plaintiffs are clearly members of a protected group, Plaintiffs satisfy

none of the remaining elements to establish their claim of hostile work environment.

**A.    The District Court Properly Found That Plaintiffs' Claims That
They Were Allegedly Paid Less (Relative To The Amount Of Work
Completed) Are Discrete Acts That Do Not Constitute Hostile
Work Environment.**

The district court properly rejected Plaintiffs' first purported basis for their

hostile work environment claim – that they were paid less (relative to the amount of

work completed) than their non-African American counterparts - "because it is not

20

the type of conduct that can even count toward the finding of a hostile work environment." Doc. 43, Mem. Opinion, PageID# 1025. In reaching its decision, the court quoted extensively from *Ogbonna-McGruder v. Austin Peay State Univ.*, No. 3:21-CV-00506, 2023 WL 3572891, at *8-10 (M.D. Tenn. May 19, 2023), *aff'd*, 91 F.4th 833 (6th Cir. 2024) to find that Plaintiffs' claims of less pay are employment-related actions that are "simply not the kind of harassment, intimidation or ridicule that contributes toward a hostile work environment." Doc. 43, Mem. Opinion, PageID# 1025 (quoting *Ogbonna-McGruder v. Austin Peay State Univ.*, No. 3:21-CV-00506, 2023 WL 3572891, at *8-10 (M.D. Tenn. May 19, 2023), *aff'd*, 91 F.4th 833 (6th Cir. 2024)). This is because acts that contribute towards a finding of a hostile work environment are actual "acts of *harassment*." Ogbonna, 2023 WL 3572891 at *9 (emphasis in original)(citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). This means "harassment in the sense of intimidation, ridicule, and insult (and the like)." *Id*. The *Ogbonna* court further explained that:

> Many kinds of actions suffered by employees simply do not fit this description. In particular, actual *employment-related* actions taken by an employer against an employee (negative though they may be for an employee) do not fit that description.
>
> * * * *
>
> This is because employment-related actions (whether or not they are illegally discriminatory or otherwise wrongful) are not in the nature of harassment in the form of intimidation, ridicule, or insult.

21

*Id.*

Despite the district court's ruling, Plaintiffs failed to brief this issue other than to merely state that:

> extra loads, work assignments and excessive hours further support Plaintiffs' hostile work environment claims. *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887 (6th Cir. 2024)(plaintiff "further alleges that the Department intended to humiliate him by assigning him to a traffic study that it knew he would not be able to successfully complete.").

Plfs' App. Brief, pp. 28-29.

Therefore, the question of whether Plaintiffs' alleged evidence of extra loads, work assignments and excessive hours supports Plaintiffs' hostile work environment claims is waived. *Barany-Snyder*, 539 F.3d at 331 (6th Cir. 2008) (holding issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Sneed*, 301 S.W.3d at 615 (citing Tenn. R. App. P. 27(a)(7)).[11]

In the event this Court determines that Plaintiffs did sufficiently brief this issue, *McNeal* is easily distinguishable. Unlike the Plaintiffs here, McNeal did not

---

[11] Although the EEOC briefed this issue, it cannot be considered on appeal. *Self-Ins. Inst. of Am., Inc. v. Snyder*, 827 F.3d 549, 560 (6th Cir. 2016) (holding that "[w]hile an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties. To the extent that the amicus raises issues or makes arguments that exceed those properly raised by the parties, we may not consider such issues.").

argue that the assignment (the traffic study) he had to complete was itself harassment. *McNeal*, 117 F.4th at 901. Rather, McNeal asserted that the Department set him up to fail from the beginning because he did not have the necessary specialized training or experience to complete the studies. As a result, the "significance of the traffic study for hostile-work-environment purposes is that the Department allegedly used the assignment strategically in a broader effort to discredit McNeal." *Id.* at 901-02.

In the event this Court finds that Plaintiffs' pay argument constitutes an actual act of harassment, this argument should be rejected (just as the district court rejected it when analyzing Plaintiffs' now-abandoned claims for race discrimination) because it is based upon unsubstantiated hearsay, speculation, and is often contradicted by Plaintiffs' own deposition testimony.

For example, when Smith was asked in his deposition how he knew that "white drivers" were assigned "better" (i.e., shorter) routes, Smith stated:

> They would tell me. And also, you would know by the time you get back, they'd be gone, so. They'd say, yeah, I got off yesterday at 11 o'clock, you know. They're like -- we'd just be within passing talking, so.

Doc. 43, Mem. Opinion, PageID #996 (quoting Doc. 33-1, Smith Depo., PageID# 469). In addition:

> Smith could not recall the names of any of the "white drivers" with whom he allegedly spoke about this topic, (*id.*) and admitted that he did

23

not know how routes were assigned. (*Id.* at 71). Moreover, Smith has
not pointed to any evidence showing that he has personal knowledge
about the amount of pay non-African American drivers received.

*Id.*

As a result, the district court properly found that Smith's speculation and reliance on hearsay simply "do not demonstrate personal knowledge on these issues and do not create a genuine issue of material fact that may be used to defeat a motion for summary judgment." *Id.* (citing *Benitez v. Tyson Fresh Meats, Inc.*, No. 3:18-CV-00491, 2022 WL 1283087, at *51 (M.D. Tenn. Apr. 28, 2022)).

The district court found that Sneed also lacks personal knowledge to support these claims because he bases his testimony almost entirely on hearsay and/or subjective beliefs that are completely unsupported by the record. Plaintiffs attempt to refute the district court's findings by claiming that Sneed testified that he "observed" fellow driver "Melvin" only had to do one load per day to Horse Cave, Kentucky, while Sneed often had to drive two loads per day to Horse Cave. Plfs' App. Brief, p. 28. However, Plaintiffs' citation to the record (Doc. 33-2, Sneed Depo., PageID# 600-01) does not support their contention. Rather, Sneed simply testified that Melvin "only had to do one load." *Id.* at 600. Sneed did not testify that he "observed" Melvin driving only one load to Horse Cave, nor could he be expected to make such an observation, considering that he and Melvin drove separate trucks.

24

Instead, Sneed testified that his claims that white drivers were given the more desirable routes were based on conversations he allegedly had with white drivers about their driving assignments.  *Id.* at 657.  However, as the district court pointed out:

> Sneed does not even purport to have knowledge about how routes were assigned or the total distance driven (on average) by each driver. Moreover, Sneed admitted that "white" drivers were (like African American drivers) assigned routes to some of the more remote locations, such as Horse Cave, Kentucky. (*Id.* at 148).

Doc. 43, Mem. Opinion, PageID# 985.

The district court found that because Sneed "bases his testimony almost entirely on hearsay and/or subjective beliefs that are completely unsupported, Sneed lacked personal knowledge to support his contentions.  As a result, the court could not consider the evidence on summary judgment.  *Id.* at 986 (citing Fed. R. Evid. 602; *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002)) ("A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact.").

Relying on *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 423–24, 2021 WL 2177668 (6th Cir. 2021), Plaintiffs claim that even though Plaintiffs' observations and conversations with other drivers are hearsay, they may be considered at summary judgment "as long as the plaintiff can proffer that it will be produced in an admissible form."  Plfs' App. Brief, p. 25.

While this may be true, Plaintiffs did not proffer that such testimony will be produced in an admissible form at trial, other than to say in conclusory fashion that the drivers they identified solely as "Melvin" and "Chris" can testify at trial. Even then, Plaintiffs *cannot* proffer that such testimony will be produced in an admissible form at trial, as the proof shows that PAM previously advised Plaintiffs that it was not even able to locate any local drivers named "Chris" during the period of time that Plaintiffs worked for PAM. Doc. 20, Jt. Disc. Dispute Stmt., PageID# 77. In addition, Sneed has not spoken to "Melvin" or "Chris" (who PAM has no record of even working during the time of Plaintiffs' employment) since leaving PAM (Doc. 33-2, Sneed Depo, PageID# 582, 688-89), and Smith could not recall the names of any of the "white drivers" with whom he allegedly spoke about this. Doc. 33-1, Smith Depo., PageID# 469.

Moreover, Sneed at times "plainly contradicted by his own testimony." Doc. 43, Mem. Opinion, PageID# 984. For example, even though Sneed testified that other drivers told him that they were paid for a full day even if they only worked a half day (Doc. No. 33-2, Sneed Depo., PageID# 646-647), Sneed later admitted that:

> "I don't know if we were all getting paid the same, but it was about the same, I would imagine. I don't know for sure." (*Id*. at PageID# 646). Sneed also testified that he had "never seen anyone's check stub." (*Id.* at 660.)

Doc. 43, Mem. Opinion, PageID# 984.

Even if Sneed's testimony was not based on hearsay or unsupported by personal knowledge, the district court found that "nearly all of his testimony is contradicted by Defendant's records" which reveal that the local drivers working out of the Whites Creek location during Plaintiffs' employment with PAM all drove *similar* routes and were assigned a *similar* number of loads per day on average. (Doc. 25-2, Wright Decl., PageID# 223, ¶ 15; No. 25-3, Wright Decl. Ex. A, Route Records, PageID# 227-264; No. 25-4, Wright Decl. Ex. B, Route List Truck Legend, PageID# 265-265). The district court found it "notable" that in responding to Defendants' Motion for Summary Judgment, "Plaintiffs do not even address (much less refute or even attempt to refute) the accuracy of Defendant's records with respect to the trucks and routes assigned to each driver." Doc. 43, Mem. Opinion, PageID# 986. Despite this warning, Plaintiffs failed to address, refute, or even attempt to refute PAM's records on appeal. As a result, PAM's records remain uncontroverted.

Based on the foregoing, Plaintiffs' self-serving testimony is blatantly and demonstrably false such that it may not create a genuine issue of material fact. *See Jara*, 2022 WL 331276 at *9 (citing *Scott*, 550 U.S. at 380)(holding that a court, when determining whether there is a genuine dispute of material fact in a case, may ignore testimonial evidence when it is "blatantly contradicted" by video evidence).

As a result, even if this Court determines that the district court improperly disregarded Plaintiffs' pay claims, Defendant is still entitled to summary judgment.

**B.    The District Court Properly Found That Plaintiffs' Claims That They Were Allegedly Treated In A Hostile And Abusive Manner Do Not Constitute Hostile Work Environment.**

Plaintiffs' second basis for their hostile work environment claim asserts that Davis and Claytor spoke to them in a "hostile and abusive manner" and referred to them as "monkey ass."

As correctly stated by the district court, where a defendant "challenges both the third and fourth elements of a claim of hostile work environment, a court should first determine what harassment was based on a plaintiff's race, and then ask whether that harassment in its totality was sufficiently severe or pervasive to create a jury question. *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011). The district court properly rejected these claims because Plaintiffs cannot prove either element.

### 1.    Plaintiffs' Allegations Are Not Based on Race

A plaintiff may prove that harassment was based on race by one of two methods - either showing: (1) direct evidence of the use of race-specific and derogatory terms, or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed race workplace. *CSX Transp. Co., Inc.*, 643 F.3d

28

at 511 (citing *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).  Plaintiffs failed to prove either.

### a. Plaintiffs failed to establish any direct evidence of race-specific and derogatory terms.

Plaintiffs first claim that they were spoken to in a "hostile and abusive manner" by their superiors, and primarily their African-American driver manager, Jermaine Davis.  However, it is well settled that Title VII does "not guarantee a utopian workplace, or even a pleasant one." *Vore v. Indiana Bell Tel. Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir.1994); *see also Franklin v. Tennessee Dep't of Transp.*, No. 3-12-0653, 2013 WL 2897944, at *7 (M.D. Tenn. June 13, 2013)(plaintiff's claims that supervisors ridiculed him and incidents with co-workers involving threats of violence, though unprofessional, did not constitute a racially hostile work environment).

In support of their claims, Plaintiffs rely on their self-serving testimony. Smith claims that Davis belittled him by his "tone of voice," asking him "why you ain't getting this done," or commenting that he should be more productive.  Doc. 33-1, Smith Depo., PageID# 454.  Sneed testified that Claytor used "cuss words and harsh language." Doc. 33-2, Sneed Depo., PageID# 663-664.  However, this testimony is simply not direct evidence "race-specific and derogatory terms." *CSX Transp.*, 643 F.3d at 511.  As a result, Plaintiffs pointed to no evidence from which

a reasonable jury could conclude that Davis and Claytor's alleged cussing, screaming, criticizing, or belittling was based was based on Plaintiffs' race.

Plaintiffs also claim that they were subjected to a hostile work environment because Davis and Claytor "repeatedly" referred to them as "monkey" and "monkey ass." Plfs' App. Brief, p. 30. However, such an allegation is disingenuous at best as it is in direct contradiction to Plaintiffs' own testimony. Neither Plaintiff ever testified that any of their supervisors "repeatedly" referred to them as "money ass," and neither Plaintiff ever testified that any of their supervisors referred to them as "monkey."[12, 13] In fact, Sneed testified that Davis only called him "monkey ass" *one time*. Doc. 33-2, Sneed Depo., PageID# 663. Smith claims that he was also called "monkey ass" by Davis, but by no means testified that Davis repeatedly used that

---

[12] Plaintiffs' bald assertions are nothing more than an underhanded attempt to conflate the two terms so that Plaintiffs can rely upon their numerous cited discrimination cases discussing the term "monkey." However, Plaintiffs have cited no authority to support any contention that the terms or synonymous, or that "monkey ass" is a derivative of the term "monkey."

The EEOC similarly claims, without any authority whatsoever, that "monkey ass" is a derogatory derivative of "monkey." The EEOC even goes so far to cite several cases to support its contention that "monkey ass" is a "slur" that "targets African Americans." EEOC App. Brief, p. 26. Yet, none of these cases mention, much less even discuss, the terms "monkey" or "monkey ass."

[13] The EEOC also disingenuously claims that Plaintiffs' supervisors *repeatedly* referred to them as "monkey ass." Yet, like Plaintiffs, the EEOC's claims are contrary to the record testimony.

term.  Doc. 33-1, Smith Depo., PageID# 454.  Sneed asserts that Jordan Claytor,

who at that time was the operations manager for PAM, also used the term "monkey

ass" and cuss words when communicating with him, but likewise did not testify that

the term was used repeatedly.  Doc. 33-2, Sneed Depo., PageID# 665.

Moreover, Plaintiffs have presented no evidence that such a remark is racially

motivated or race specific, which would be highly suspect given that the term was

allegedly directed at them by another *African-American*.   As the district court

pointed out, the term "monkey ass":

> is not "direct evidence of the use of race-specific and derogatory terms"
> because one would have to infer that the term is racially motivated. And
> even if such an inference is reasonable, what matters is that such an
> inference would be required; the requirement of an inference
> (reasonable or otherwise) is what takes such references out of the realm
> of direct evidence. Moreover, Plaintiffs have not pointed to any
> evidence tending to show that Davis and Claytor used "monkey ass" to
> refer only to African American employees, further calling into question
> Plaintiffs assertion that the term was based on race.

Doc. 43, Mem. Opinion, PageID# 1028.

As a result, the district court properly found that Plaintiffs have not raised a

genuine issue of fact as to whether Davis and Claytor's use of "monkey ass" was

based on Plaintiffs' race, and cannot establish the third element of their respective

claims for hostile work environment.[14]

---

[14] Plaintiffs inexplicably argue that *PAM* has "presented no evidence that Davis and
Claytor spoke to and treated non-African American drivers in the hostile and abusive

      **b.**    **Plaintiffs failed to establish any comparative evidence about how the alleged harasser treated members of both races in a mixed race workplace.**

A plaintiff that is unable to prove direct evidence of the use of race-specific and derogatory terms, may alternatively establish the third element of hostile work environment by pointing to "comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." *CSX Transp. Co., Inc.*, 643 F.3d at 511. In effort to do so, Plaintiffs rely on Smith's testimony that when he heard Davis speak with non-African American drivers, Davis spoke "more professional[ly] and how it should be done," (Doc. 33-1, Smith Depo,, PageID# 455), and rely on Sneed's testimony that "[Davis and Claytor] would criticize me on something, but they wouldn't say anything to the white driver about it." (Doc. No. 33-2, Sneed Depo., PageID# 635).

The district court found that this testimony to be inadmissible because Plaintiffs lacked personal knowledge as to anyone's race. When discussing white comparators, Plaintiff failed to offer any evidence that they are "white" in race, as opposed to the *color* of their skin being white. Therefore, Plaintiffs offered no evidence personal knowledge to assert that Chris and Melvin are "white" in a racial

---

manner in which they did Plaintiffs or that they called any other driver 'monkey' and 'monkey ass.'" However, it is Plaintiffs' burden, not PAM's, to prove that the elements of their hostile work environment claims.

sense. Discrimination based on color, however, is a distinct cause of action from discrimination based on race. *See Moore*, 2007 WL 596955 at \*2. Therefore, Plaintiffs had not shown that any of the drivers were in fact outside of Plaintiffs' protected class. Doc. 43, Mem. Opinion, PageID# 983. The district court elaborated that a sufficient showing could take the form of a simple averment "that the alleged comparators actually and specifically identify as being other than African American," or of "an admission by the defendant-employer." *Id.* However, in the view of the district court, a plaintiff's "mere assertion that he has perceived unidentified people to be "white" (and thus supposedly not African American)," which is all that Plaintiffs had done, will not suffice. *Id.*

Plaintiffs criticize the district court for citing no case law or binding authority "suggesting that Plaintiffs' perceptions of their fellow drivers' races as 'white' or 'non-African American' is inadmissible or insufficient.'" Plfs' App. Brief, p. 26. Yet, Plaintiffs' fail to cite any case law or binding authority to support their claim that their "identification of 'white' and 'non-African American' drivers based on their own observations and perceptions constitutes admissible evidence, particularly for purposes of summary judgment." *Id.*

Even if Plaintiffs' "perception" is sufficient to establish personal knowledge of comparators' races, Plaintiffs' claims fail because "Plaintiffs have not pointed to any *admissible* evidence showing that Davis and Claytor treated non-African

33

American drivers differently than they treated Plaintiffs with respect to their tone." *Id.* at 1028. Rather, "Sneed's purported basis for his statement that 'white' drivers were not criticized for the same conduct was simply that '[the white drivers] never mentioned it [to him].'" *Id.* at 1027 (quoting Doc. 33-2, Sneed Depo., PageID# 636).

Plaintiffs did not provide any competent proof to meet their burden of establishing that any comparative evidence about how the alleged harasser treated members of both races in a mixed race workplace. Accordingly, Plaintiffs cannot establish the third prong of their hostile work environment claims.

> ### 2. Plaintiffs Allegations Of Harassment In Its Totality Was Not Sufficiently Severe Or Pervasive To Alter The Conditions Of Plaintiffs' Employment And Create An Abusive Working Environment

Plaintiffs, likewise, cannot establish the fourth prong of their hostile work environment claims showing that based on the totality of the alleged harassment, they were subjected to sufficiently severe or pervasive racial harassment to alter the conditions of Plaintiffs' environment and create an abusive working environment.

Plaintiffs' cited testimony does not support their claims that Davis and Claytor "repeatedly" called them "monkey ass," or ever called them "monkey," as Plaintiffs now disingenuously claim. In fact, as stated above, Sneed testified that Davis called

him "monkey ass" *one time*, Doc. 33-2, Sneed Depo., PageID# 663, and there is zero evidence that Plaintiffs' superiors ever referred to either of them as "monkey."

Even if the Plaintiffs could prove that their superiors referred to them as "monkey," the district court correctly determined that "the Sixth Circuit has held that the sporadic use of the term 'monkey' to refer to an employee by a manager is insufficient to create a hostile work environment." Doc. 43, Mem. Opinion, PageID# 1028-29 (citing *Ejikeme v. Violet*, 307 F. App'x 944, 949 (6th Cir. 2009)(finding that scattered comments by the plaintiff's manager referring to the plaintiff as a "monkey" fell short of creating an objectively hostile work environment for purposes of Title VII) and *CSX Transp*., 643 F.3d at 513 (finding "sporadic racial comments that black people were 'monkeys' and should 'go back to where they came from,' were not severe enough to create a hostile work environment because although 'insensitive, ignorant, and bigoted,' they 'more closely resembled a mere offensive utterance than conduct that is physically threatening or humiliating'")).

As a result, the district court saw no reason (and Plaintiffs suggested none) why it should draw a different conclusion with regard to the alleged term "monkey ass," "particularly where Plaintiffs have offered no evidence whatsoever suggesting that the term 'monkey ass' was frequently used or was used in a context that would make its use particularly humiliating to Plaintiffs." Doc. 43, Mem. Opinion, PageID #1029.

Even accepting everything Plaintiffs allege as true, their complaints simply do not rise to the requisite level of severity or pervasiveness when compared to the standards established in this Circuit. *See, e.g., Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 433 (6th Cir. 2014)(supervisor's use of a telephone cord to create a noose and coworkers' references to fried chicken and watermelon did not create a hostile work environment); *Kelly v. Senior Centers*, 169 F. App'x 423, 429 (6th Cir. 2006) (no hostile work environment created despite claims that staff used the term "n*****," an executive director described a board member as a "token black," and a program coordinator made three racist jokes and criticized an African-American staff member's bathroom habits). Rather, the district court properly found that "Plaintiffs' testimony shows, at most, nothing more than 'mere offensive utterances,' which 'are not actionable under Title VII.'" Doc. 43, Mem. Opinion, PageID# 1029-30 (quoting *Goldfaden v. Wyeth Labs., Inc*., 2010 WL 2011310, at *13 (E.D. Mich. May 19, 2010) (citing *Harris v. Forklift Sys*., 510 U.S. 17, 21 (1993)).

Moreover, Plaintiffs have failed to meet their burden of showing the alleged harassment was pervasive enough to alter the conditions of their employment. Smith testified that Davis' alleged use of an unprofessional tone with him and alleged use of the term "monkey ass" interfered with his job performance. When questioned as to *how* it affected his job performance, Davis merely testified that he is sure it

36

"slowed him" down. Doc. 33-1, Smith Depo., PageID# 456. Yet, Smith admitted that he was never written up for being too slow or inefficient. *Id.* at 458. In fact, when Smith resigned his position with PAM, PAM marked him as available for rehire. *Id.* at 459.

Smith and Sneed both claim that they have suffered from anxiety as a result of the alleged harassment. Doc. 33-1, Smith Depo., PageID# 494-498; Doc. 33-2, Sneed Depo., PageID# 642, 645, 692-694. Citing *McNeal*, Plaintiffs claim that this evidence, along with having low morale, and feeling embarrassed, humiliated, less enthusiastic, lends further credence to Plaintiffs' claims that the "alleged harassment was severe or pervasive enough to alter the conditions of his employment." Plfs' App. Brief, pp. 43-44 (quoting *McNeal*, 117 F.4th at 905). Yet, Plaintiffs omit the fact that McNeal, unlike Plaintiffs, produced evidence showing that the alleged conduct significantly affected his wellbeing to the point that he forced to "seek out medical treatment and begin taking prescription anxiety medication for the first time." *McNeal,* 117 F.4th at 905. Although a plaintiff is not required to show that the alleged harassment seriously affected his psychological wellbeing or caused him to suffer injury, a plaintiff must produce evidence that the environment "would reasonably be perceived . . . as hostile or abusive." *Id.* at 904.

Plaintiffs' vague and speculative evidence of how the alleged conduct made them feel simply does not rise to the level of even being reasonably hostile or abusive

37

such that they can avoid summary judgment. More importantly, Plaintiffs' claims contradict their own testimony that Smith left in good standing, and that Sneed denied having ever having any performance issues while at PAM. Plfs' App. Brief, p. 17. Plaintiffs simply cannot have it both ways.

Plaintiffs even claim that their communications with each other during their employment about how they were being discriminated against and harassed because of their race "further supports their hostile work environment claims." Plfs' App. Brief, p. 36. Yet, Plaintiffs' employment as local drivers overlapped by *less than* two weeks!

Based on the totality of the alleged harassment, Plaintiffs failed to meet their burden of establishing a genuine question of fact as to whether they were subjected to sufficiently severe or pervasive racial harassment to alter the conditions of their environment and create a hostile work environment. As a result, the district court properly granted Defendant summary judgment.

### C.   PAM Is Not Liable Because Plaintiffs Cannot Show That PAM Knew Or Should Have Known About The Alleged Harassment And Failed To Act

Plaintiffs failed to prove the fifth element of hostile work environment because they cannot show that PAM knew or should have known about the harassment and failed to act. Other than their own testimony, Plaintiffs have presented no evidence that they ever complained about any such acts. As stated

38

above, even though Sneed testified that he mostly used Qualcomm to communicate, there is not a single use of the term in the voluminous message, or a single reference to discriminatory acts of any kind.

In addition, Smith admits that he allegedly reported the discriminatory behavior to Jim Brown, a former driver liaison who is unfortunately now deceased, less than five times. While Plaintiffs dispute that Mr. Brown had no supervisory authority, their citations to the record do not support their contention that *all* driver liaisons had such authority. As a result, there is no evidence that PAM knew or should have known about the alleged use of this term or any other discriminatory act and yet failed to act.

Even if Plaintiffs could somehow prove that they established the third, fourth, and fifth elements of hostile work environment, an employer may not be held liable for the harassment where (1) "the employer exercised reasonable care to prevent and correct promptly any…harassing behavior;" and (2) "the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). The employer's burden under the second element is met when the employer demonstrates that an employee unreasonably failed to use any complaint procedure provided by the employer. *Id.* at 807–08.

As previously stated, Plaintiffs concede that they received a copy of PAM's driver manual which sets forth PAM's Anti-Discrimination and Harassment Policy and PAM's Open Door Communications Policy. However, neither Plaintiff ever reported any discriminatory conduct to PAM's human resources department or to PAM's president although they acknowledged that they could have done so.

In addition, PAM has no record of Plaintiffs ever reporting any such conduct, despite Sneed testifying throughout his deposition that he reported his complaints of racial discrimination numerous times through Qualcomm messages. In fact, Sneed's Qualcomm messages, which spanning over 36,000 lines of an Excel spreadsheet, do not reveal even one single instance where he made racial complaints or reported the use of any alleged or perceived racial slurs.

Although Sneed stated in his deposition that at times he communicated with his superiors by phone (Doc. 33-2, Sneed Depo., PageID# 619-620), he also stated that "for the most part, all communication was done by the Qualcomm." *Id.* at 610. With respect to communications he had with Davis, Sneed stated that he communicated with Davis *only* through Qualcomm. (*Id*. at 608). As posited by the district court:

> if *all* of Sneed's communications with Davis occurred via Qualcomm, and at least *some* of his complaints were made to Davis, one would expect that at least one complaint would appear in the Qualcomm records. But that is not the case. Plaintiffs attempt to explain this inconsistency (unpersuasively) by asserting that the Qualcomm

messages produced by Defendant are incomplete and/or indecipherable. Specifically, Plaintiffs maintain that Defendant's production of Qualcomm messages is missing written complaints submitted by Sneed to Defendant (or, in the alternative, that such messages are indecipherable in the documents produced by Defendant). (Doc. No. 31 at 23). The Magistrate Judge previously rejected this argument, finding instead that Defendant's production of Qualcomm messages was responsive to Plaintiffs' requests for such information and that Plaintiffs failed to demonstrate the existence of "missing" relevant messages (i.e., complaints by Sneed to Defendant). (*See* Doc. No. 30 at 2-3).

Doc. 43, Mem. Opinion, Page ID# 1017-18 (emphasis in original).

The district court concurred with the magistrate judge's findings "that there is no valid basis from which a factfinder could reasonably conclude that written complaints by Sneed are (conveniently, for Sneed) missing from Defendant's production of Qualcomm messages." Doc. 43, Mem. Opinion, Page ID# 1018-19 More importantly, "if such messages truly existed and were missing from Defendant's records, Plaintiff would have had every incentive to maintain documentation of those messages at the time they were sent or to obtain those messages directly from Qualcomm during this litigation."[15]  *Id.* at 1019.  Yet, Sneed made no effort to do either of these things.  *Ids.*

---

[15] Given that this is the *fifth* lawsuit Sneed has filed against a former employer in this Court since 2007 by one or both of his current counsel of record, the magistrate judge found it "simply not credible for Sneed not to have maintained any information about the timing or substance of the complaints from which to track the reconstructed Qualcomm records." Doc. 30, Order, PageID# 346-347.

Ultimately, Sneed's "unsupported (and self-serving) testimony effectively amounts to a mere scintilla of (entirely uncorroborated) evidence. And a mere scintilla of evidence will not suffice to prevent summary judgment." *Masters Ent. Grp., Inc. v. Aurich*, No. 3:18-CV-01314, 2022 WL 2137090, at *20 (M.D. Tenn. June 14, 2022) (citing *Babcock & Wilcox Co. v. Cormetech, Inc.,* 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence . . . to a material fact is insufficient to forestall summary judgment.")).

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Defendant P.A.M. Transport, Inc. respectfully requests that the Court affirm the district court's judgment granting Defendant summary judgment and dismiss Plaintiffs' claims in their entirety with prejudice.

Respectfully submitted,

s/ Autumn L. Gentry
M. Reid Estes, Jr., #9043
Autumn L. Gentry, #20766
DICKINSON WRIGHT PLLC
424 Church Street, Suite 800
Nashville, Tennessee  37219
Telephone:  (615) 244-6538
Facsimile:  (844) 670-6009a
restes@dickinsonwright.com
agentry@dickinsonwright.com

*Counsel for Defendant-Appellee*
*P.A.M. Transport, Inc*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served upon the following via the court's efiling system to:

Stephen W. Grace
1019 16th Avenue, South
Nashville, Tennessee 37212
sgrace@sgracelaw.com

Douglas B. Janney III
5115 Maryland Way
Brentwood, Tennessee 37027
doug@janneylaw.com

Tara Patel
EEOC
Office of General Counsel
131 M St. NW, Fifth Floor
Washington, DC  20507
tara.patel@eeoc.gov

Dated:  November 19, 2024

s/ Autumn L. Gentry
Autumn L. Gentry

# CERTIFICATE OF COMPLIANCE

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   [X]    this brief contains **10,948** words, even including the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 6 Cir. R. 32(b)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [X]    this brief has been prepared in a proportionally spaced typeface using **Microsoft Word Times New Roman 14-point font.**

**ADDENDUM**
Designation of Relevant District Court Documents

| Doc. No. | Description of the Document | Page ID# Range |
|---|---|---|
| 1 | Complaint | 1-6 |
| 20 | Joint Discovery Dispute Statement | 62-135 |
| 24 | Motion for Summary Judgment | 157-59 |
| 25 | Memorandum in Support of Motion for Summary Judgment | 160-180 |
| 25-2 | Holly Wright Declaration | 221-226 |
| 25-3 | Holly Wright Decl., Ex. A, Route Records | 227-264 |
| 25-4 | Holly Wright Decl., Ex. B, Route List Truck Legend | 275-277 |
| 26 | Defendant's Statement of Undisputed Material Facts | 301-314 |
| 30 | Order | 345-348 |
| 31 | Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment | 349-372 |
| 32 | Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts | 373-398 |
| 33-1 | Michael Smith Deposition Transcript | 401-510 |
| 33-2 | Monaleto Sneed Deposition Transcript | 511-715 |
| 39 | Reply in Support of Defendant's MSJ | 930-937 |
| 43 | Memorandum Opinion of the District Court | 943-1031 |

4881-4626-1244 v1 [27403-23]